UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN WILLOUGHBY, as Next Friend to JANE    *
DOE, and KEVIN WILLOUGHBY,    *
   *
       Plaintiffs,    *
   *
      v.    *       Civil Action No. 09-11398-JLT
   *
TISBURY, TOWN OF, et al.,    *
   *
       Defendants.    *

MEMORANDUM

November 10, 2010

TAURO, J.

I.     Introduction

      Plaintiffs, Kevin Willoughby and his minor child Jane Doe, are individuals who reside in

Edgartown, Massachusetts.  Their Amended Verified Complaint [#30] ("Amended Complaint")

alleges misconduct by two groups: the Defendant Town of Tisbury ("Town") and the Town's

Board of Selectmen, Defendant Tristan Israel, Defendant Jeffrey C. Kristal, and Defendant

Geoghan Coogan (collectively, "Town Defendants"); and Town police officers Daniel Hanavan,

Jason Marathias, Joseph Ballotte, and John Cashin (collectively, "Individual Defendants").[1]

Plaintiffs assert three counts against Defendants: (1) a violation of 42 U.S.C. § 1983 by all

---

[1] There are two additional defendants in this action: Rebecca Tremblay and Mark Stanton. Neither Tremblay nor Stanton is included in either of the groups of defendants that have submitted motions to dismiss.  See Defs. Town of Tisbury, Tristan Israel, Jeffrey C. Kristal & Geogahn Coogan's 2d Mot. Dismiss, 1 [#31]; Defs. John Cashin, Daniel Hanavan, Jason Marathias & Joseph Ballotte's 2d Mot. Dismiss, 1 [#33].

Defendants except Tremblay;[2] (2) a Massachusetts civil rights violation by all Defendants except

the Town;[3] and (3) reckless and/or intentional infliction of emotional distress by all Defendants.[4]

Presently at issue are the Town Defendants' Second Motion to Dismiss [#31] and the

Individual Defendants' Second Motion to Dismiss [#33].  For the following reasons, both

Motions are ALLOWED.

II.     Background

    A.      Facutal Background[5]

Plaintiff Kevin Willoughby is the father of Jane Doe, a minor child.[6]  Willoughby has had

custody of Doe and her brother since 2000.[7]

In April 2006, Willoughby began a romantic relationship with Defendant Rebecca

Tremblay.[8]  In June 2006, Tremblay moved into Willoughby's home in Edgartown,

Massachusetts.[9]  In July 2006, Willoughby, contemplating marriage, purchased a ring for

---

[2] Am. Verified Compl. ¶¶ 95–100 [#30].

[3] Am. Verified Compl. ¶¶ 101–04 [#30].

[4] Am. Verified Compl. ¶¶ 105–06 [#30].

[5] Because the issues analyzed here arise in the context of two motions to dismiss, this court presents the facts as they are related in Plaintiffs' Amended Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiffs, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[6] Am. Verified Compl. ¶ 13 [#30].

[7] Am. Verified Compl. ¶ 14 [#30].

[8] Am. Verified Compl. ¶ 15 [#30].

[9] Am. Verified Compl. ¶ 16 [#30].

Tremblay.[10]

Between December 2006 and January 2007, the relationship between Tremblay and Willoughby began to deteriorate.[11]  Willoughby became concerned that Tremblay was using illegal drugs.[12]  She often acted erratically and screamed at Willoughby and his children.[13]  On July 15, 2007, Willoughby asked Tremblay to leave his home, but she refused and locked herself in the bedroom.[14]  As a result, Willoughby called the Edgartown police.[15]  After the police were called, Tremblay left the home without further incident.[16]

On or about July 17, 2007, Willoughby served Tremblay with a no-trespass order stating that she was not to return to his home or place of business.[17]  For her part, Tremblay took out an emergency restraining order against Willoughby.[18]

Shortly after Tremblay's removal from Willoughby's home, Willoughby discovered from Doe that Tremblay had provided Doe with illegal drugs and alcohol.[19]  Tremblay had also told

---

[10] Am. Verified Compl. ¶ 17 [#30].

[11] Am. Verified Compl. ¶ 18 [#30].

[12] Am. Verified Compl. ¶ 19 [#30].

[13] Am. Verified Compl. ¶ 20 [#30].

[14] Am. Verified Compl. ¶¶ 20–21 [#30].

[15] Am. Verified Compl. ¶ 23 [#30].

[16] Am. Verified Compl. ¶ 24 [#30].

[17] Am. Verified Compl. ¶ 25 [#30].

[18] Am. Verified Compl. ¶ 26 [#30].

[19] Am. Verified Compl. ¶¶ 27, 31–34, 36, 38 [#30].

Doe how to take the drugs and the two had snorted drugs together.[20]  Occasionally, Tremblay had

given Doe money to buy drugs, but Doe had spent the money on other things.[21]  On those

occasions, Tremblay had become irate and had told Willoughby that Doe had taken the money

from her.[22]  After hearing these allegations from Doe, Willoughby found drug paraphernalia inside

and outside his home.[23]

     Willoughby went to the police department of Defendant Town and spoke with Defendant

Officer Mark Stanton to make a criminal complaint against Tremblay for providing drugs to a

minor.[24]  Willoughby also wanted to make a complaint against Defendant Officer Jason

Marathias.[25]  Additionally, Willoughby told the police that Tremblay had been secretly dropping

off and picking up Doe at the house of her boyfriend, who was under house arrest.[26]  Finally,

Willoughby said to the police officer on duty that he wanted to speak with the Chief of Police

Defendant John Cashin.[27]  Willoughby never heard from Chief Cashin or anyone else in the police

department.[28]

     On July 19, 2007, Judge Bernadette L. Sadler of the Edgartown District Court refused to

---

[20] Am. Verified Compl. ¶¶ 35, 37 [#30].

[21] Am. Verified Compl. ¶¶ 39–49 [#30].

[22] Am. Verified Compl. ¶ 41 [#30].

[23] Am. Verified Compl. ¶ 42 [#30].

[24] Am. Verified Compl. ¶ 28 [#30].

[25] Am. Verified Compl. ¶ 28 [#30].

[26] Am. Verified Compl. ¶ 43 [#30].

[27] Am. Verified Compl. ¶ 29 [#30].

[28] Am. Verified Compl. ¶ 30 [#30].

extend Tremblay's restraining order against Willoughby.[29]

Thereafter, Willoughby repeatedly went to the Town police station.[30]  Defendant police officers repeatedly told Willoughby that Chief Cashin was not available and ignored his request for an investigation of Tremblay.[31]  At no time was Willoughby's complaint ever processed or filed, nor was any investigation of Tremblay ever conducted.[32]

Willoughby then discovered that Tremblay was romantically involved with Officer Marathias and had been romantically involved with him since before July 15, 2007.[33]  Officer Marathias, in his police uniform, followed Doe around town and leered at her.[34]

Willoughby owns and operates an automobile repair business in the Town and has often repaired police vehicles.[35]  On or about July 23, 2007, Defendants Officer Daniel Hanavan and Officer Joseph Ballotte reclaimed their police vehicles from Willoughby's business but never paid for the repairs.[36]

Willoughby asserts that Town police officers retaliated against him by: issuing him parking tickets; following him until he reached town borders; and making complaints about his business to

---

[29] Am. Verified Compl. ¶ 49 [#30].

[30] Am. Verified Compl. ¶¶ 50–54 [#30].

[31] Am. Verified Compl. ¶¶ 50–54 [#30].

[32] Am. Verified Compl. ¶¶ 61, 75 [#30].

[33] Am. Verified Compl. ¶ 55 [#30].

[34] Am. Verified Compl. ¶ 60 [#30].

[35] Am. Verified Compl. ¶¶ 62–63 [#30].

[36] Am. Verified Compl. ¶¶ 64–65 [#30].

the Division of Standards of the Commonwealth of Massachusetts.[37]

The Town police department has an official manual that lays out Town police officers' responsibilities,[38] which include, inter alia, "enforcing the law, investigating complaints,"[39] and assisting residents in "an official, courteous manner."[40]

In August 2007, approximately one month after making complaints to the Town's police department, Willoughby made a complaint to a police officer in the Edgartown Police Department.[41]

B. Procedural Background

On August 21, 2009, Plaintiffs filed a Verified Complaint [#1] against all Defendants. On October 23, 2009, the Town Defendants and the Individual Defendants each submitted a Motion to Dismiss [#19, 20]. In response to the Motions to Dismiss, on December 2, 2009, Plaintiffs filed a Motion to Amend Complaint [#26]. On April 12, 2010, this court allowed Plaintiffs to amend their Complaint and denied Defendants' Motions to Dismiss without prejudice to refiling after entry of Plaintiffs' amended complaint.[42]

Plaintiffs filed their Amended Complaint [#30] on May 7, 2010. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Town Defendants and the Individual Defendants each filed a

---

[37] Am. Verified Compl. ¶¶ 66–68 [#30].

[38] Am. Verified Compl. ¶¶ 70–74 [#30].

[39] Am. Verified Compl. ¶ 72 [#30].

[40] Am. Verified Compl. ¶ 73 [#30].

[41] Am. Verified Compl. ¶ 79 [#30].

[42] Order [#29].

Second Motion to Dismiss [#31, 33] on May 21, 2010.  On November 4, 2010, this court held a

Hearing on this matter.

III.    Discussion

    A.    Standard of Review

    In considering a motion to dismiss pursuant to Rule 12(b)(6), a "court must 'take all

factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"[43]  To

survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that, if

taken as true, demonstrate a plausible claim for relief.[44]

    B.    Town Defendants' Second Motion to Dismiss

      1.    The Town Selectmen

    Plaintiffs' Amended Complaint names the members of the Town's Board of Selectmen as

defendants in this action in their capacity as members of the Board of Selectmen.[45]  A claim

against the Selectmen in their official capacities is merely another way of pleading a claim against

the Town itself,[46] which Plaintiffs have already done.  Moreover, as the Town Defendants point

---

    [43] Pettengill, 584 F. Supp. 2d at 362 (quoting Rodriguez-Ortiz, 490 F.3d at 96 (emphasis omitted)).

    [44] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–58 (2007); see Trans-Spec, 524 F.3d at 320.

    [45] Am. Verified Compl. ¶¶ 9–11 [#30].

    [46] See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Canney v. City of Chelsea, 925 F. Supp. 58, 69 (D. Mass. 1996) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)); see also Cronin v. Town of Amesbury, 895 F. Supp. 376, 383 (D. Mass. 1995) (explaining that a Board of Selectmen was not properly named as a defendant).

out[47] and as Plaintiffs' counsel conceded at the Hearing on November 4, the <u>Amended Complaint</u> literally fails to state a claim against the Town Selectmen.  That is, the <u>Amended Complaint</u> contains no allegations against the individual Selectmen or the Board of Selectmen.  For this reason, this court agrees that all claims against the Selectmen should be dismissed.  This court thus proceeds with the analysis of this motion assuming that the Town is the sole remaining Town Defendant.

         2.      <u>Count I: 42 U.S.C. § 1983</u>

In Count I, Plaintiffs assert a violation of 42 U.S.C. § 1983 by all Defendants except Tremblay.[48]  Plaintiffs allege that Defendants violated Plaintiffs' rights under the First Amendment, the Due Process Clause, and the Equal Protection Clause.[49]

         a.      <u>Legal Framework</u>

The Supreme Court has held that "a municipality cannot be held liable <u>solely</u> because it employs a tortfeasor—or, in other words, a  municipality cannot be held liable under § 1983 on a <u>respondeat</u> <u>superior</u> theory."[50]  If a plaintiff asserts a § 1983 claim against a municipality, two separate issues arise.[51]  First, the court must determine whether the plaintiff's harm was caused by a constitutional violation.  Second, if the court finds a constitutional violation, the court must then

---

[47] <u>See</u> Mem. Law Supp. Defs. Town of Tisbury, Tristan Israel, Jeffrey C. Kristal & Geoghan Coogan's 2d Mot. Dismiss, 4 [#32] [hereinafter Mem. Law Supp. Town Defs.' Mot. Dismiss].

[48] Am. Verified Compl. ¶¶ 95–100 [#30].

[49] Am. Verified Compl. ¶ 96 [#30].

[50] <u>Monell</u>, 436 U.S. at 691; <u>see</u> <u>Young v. City of Providence</u>, 404 F.3d 4, 26 (1st Cir. 2005).

[51] <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992).

determine whether the city is responsible for that violation.[52]  For a plaintiff to establish

municipality liability under this second step, the plaintiff must "establish both that (1) there existed

a municipal custom or policy of deliberate indifference to the commission of constitutional

violations by police officers; and (2) this custom or policy was the cause of, and moving force

behind, the particular constitutional deprivation of which he was complaining."[53]

> b.    Constitutional Violation

Here, under the first step in the municipal § 1983 analysis, Plaintiffs have failed to allege

an underlying violation of their constitutional rights.  None of their constitutional claims withstand

a Rule 12(b)(6) motion to dismiss.

> i.    First Amendment Claim

Although Plaintiffs did not plead their First Amendment claim with specificity in the

Amended Complaint, this court agrees with the Town Defendants that there are essentially two

components to Plaintiffs' First Amendment claim.[54]  First, Plaintiffs appear to claim that

---

[52] Id. (citing City of Okla. City v. Tuttle, 471 U.S. 808, 817 (1985)); Young, 404 F.3d at
25–26.

[53] Foley v. Lowell, 948 F.2d 10, 14 (1st Cir. 1991); see Young, 404 F.3d at 26 (citing Bd.
of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) and Bordanaro v. McLeod, 871 F.2d
1151, 1161–63 (1st Cir. 1989)); see also Britton v. Maloney, 901 F. Supp. 444, 449 (D. Mass.
1995) ("[T]here must be a showing in a Section 1983 action of 'a direct causal link' between the
municipal policy or custom and the alleged constitutional deprivation." (quoting Canton v. Harris,
489 U.S. 378, 385 (1989))).

[54] See Mem. Law Supp. Town Defs.' Mot. Dismiss, 5 [#32] (adopting the reasoning set
forth in the Individual Defendants' Motion to Dismiss regarding Plaintiffs' constitutional claims);
Mem. Law Supp. Defs. John Cashin, Daniel Hanavan, Jason Marathias & Joseph Ballotte's 2d
Mot. Dismiss, 4 [#34] [hereinafter Mem. Law Supp. Individual Defs.' Mot. Dismiss]; see also
Pls.' Opp'n Defs. John Cashin, Daniel Hanavan, Jason Marathias & Joseph Ballotte's 2d Mot.
Dismiss & Pls.' Opp'n Defs., Town of Tisbury, Tristan Israel, Jeffrey C. Kristal & Geoghan
Coogans' 2d Mot. Dismiss, 5 [#37] [hereinafter Pls.' Opp'n] ("The Plaintiffs are bringing first

Defendants' failure to act upon Willoughby's complaints to the police constitutes a First Amendment violation. Second, Plaintiffs appear to claim that the police officers' retaliatory actions constitute a First Amendment violation.

With regard to their first allegation, Plaintiffs have not established a First Amendment violation. Willoughby complained to the Town police officers about Tremblay on several occasions.[55] In making these complaints, Plaintiffs exercised their First Amendment right to petition the government for redress. The right to petition the government is not equivalent to a guarantee that a plaintiff will receive the requested relief.[56] Indeed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."[57] Plaintiffs here thus had no interest in Defendants actually investigating Tremblay.

Plaintiffs' second First Amendment allegation, that Defendants acted "with the intent and purpose of intimidating" Plaintiffs' First Amendment rights and "in fact chilled those . . . rights,"[58] also falls short. The First Circuit has explained that a plaintiff's "standard of proof in a § 1983 action alleging First Amendment violations by a police officer" corresponds to the standard from

---

amendment claims, but based upon the allegations that the Defendants' actions caused a deprivation of the first amendment right and that the actions of the Defendants chilled and/or intimidated the Plaintiffs' actions violating their first amendment rights which constitute a violation and deprivation of their first amendment rights.").

[55] See Am. Verified Compl. ¶¶ 28, 50–51 [#30]; see also id. ¶¶ 53, 54.

[56] Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 150 (D. Mass. 2006) (citing Cecelia Packing Corp. v. U.S. Dep't of Agric., 10 F.3d 616, 623 (9th Cir. 1993)); see Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 288 (1984) ("A person's right to speak is not infringed when government simply ignores that person . . . ."); Tempelman v. Philbrick, 43 F.3d 1456, 1994 WL 697274, at *1 (1st Cir. Dec. 14, 1994).

[57] Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

[58] Am. Verified Compl. ¶ 89 [#30].

the employment discrimination context.[59]  To show a First Amendment violation in this context, a

plaintiff "must allege that his speech was in fact chilled or intimidated" by the defendant's

behavior.[60]  Plaintiffs have not pled facts sufficient to show that Defendants' actions in fact chilled

or intimidated their speech.  Although Plaintiffs' Amended Complaint includes a blanket allegation

that Defendants' actions "in fact chilled those first amendment [sic] rights,"[61] the substantive

assertions of the Amended Complaint belie this statement.  After all, Willoughby effectively told

one of the police officers that his speech would not be chilled,[62] and Willoughby repeatedly

complained to both the Town police and the Edgartown police.[63]

ii.   Due Process Claim

Much like their First Amendment claim, Plaintiffs have not pled their Due Process claim

with specificity.  Indeed, this court finds it difficult to divine which allegations Plaintiffs intend to

support their Due Process claim.  In their Opposition to the Motions to Dismiss, Plaintiffs only

devote one paragraph to their allegations of Fifth and Fourteenth Amendments violations.[64]  In

that paragraph, Plaintiffs seem simply to restate their First Amendment claim.[65]  To the extent that

---

[59] Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994).

[60] Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989).

[61] Am. Verified Compl. ¶ 89 [#30].

[62] Am. Verified Compl. ¶ 52 [#30] ("Willoughby advised Officer Hanavan that he would not go away in pursuing his complaint and would be back.").

[63] See Am. Verified Compl. ¶¶ 28, 50–54, 79–80 [#30].

[64] See Pls.' Opp'n, 10 [#37].

[65] See Pls.' Opp'n, 10 [#37] ("Plaintiffs have the right to exercise their freedom of speech and the Defendants are not permitted to engage in conduct which is directed at chilling and/or intimidating the Plaintiffs' right to petition the government to request and [sic] investigation.").

Plaintiffs' Due Process claim rests on the fact that Defendants failed to investigate Tremblay, that claim is insufficient to establish a constitutional violation.  As discussed above, Plaintiff does not have a judicially cognizable interest in the prosecution of Tremblay.[66]

### iii.    Equal Protection Claim

As with their Due Process Claim, Plaintiffs failed to include any statement in their Amended Complaint as to the factual basis for their Equal Protection claim.  Nor does Plaintiffs' Opposition to the Motions to Dismiss clarify their claim.[67]  At the November 4, 2010 Hearing on this matter, Plaintiffs's counsel suggested that the Equal Protection claim stems from the fact that Town police officers did not follow the official police department manual.  Plaintiffs' counsel further suggested that this manual represents how Town police officers treat other individuals.

Plaintiffs have failed to allege any facts that support the assertion that Town police officers' conduct usually comports with the manual.  Plaintiffs have also failed to allege that they are part of a suspect class for Equal Protection purposes.

For the foregoing reasons, Plaintiffs have failed to allege any constitutional violations.

### c.    Municipal Liability

Even if Plaintiffs had succeeded in alleging an underlying constitutional violation, their claim would fail on the second step of the municipal § 1983 analysis.  That is, this court would

---

Moreover, Plaintiffs cite only two cases: Sullivan, 888 F.2d at 4, a case that does not mention due process, and Farrar v. City of Chicago, 291 F. Supp. 2d 747, 752 (N.D. Ill. 2003), a persuasive authority that does not shed light on Plaintiffs' due process claim.

[66]  See Linda R.S., 410 U.S. at 619.

[67]  See supra Part III.B.2.b.ii.

have to hold that the Town was <u>liable</u> for any constitutional violation.[68]  To be liable, Plaintiffs

would have had first to establish that the Town had a custom or policy of deliberate indifference

to the commission of constitutional violations by police officers.[69]  Plaintiffs have pled no such

facts.[70]  For that reason, this court need not reach the question of whether such a policy was the

cause of any particular constitutional deprivation.[71]

        3.      <u>Count II: Massachusetts Civil Rights Violation</u>

Plaintiffs assert Count II, a violation of the Massachusetts Civil Rights Act ("MCRA"),

against all Defendants except the Town.[72]  As this court has already determined that Plaintiffs'

claims against the Town Selectmen must be dismissed,[73] Plaintiffs have no remaining claim against

the Town Defendants under Count II.

        4.      <u>Count III: Reckless and/or Intentional Infliction of Emotional Distress</u>

Plaintiffs assert Count III, reckless and/or intentional infliction of emotional distress,

against all Defendants.[74]  Pursuant to Massachusetts law, the Town is immune from liability for

"any claim arising out of an intentional tort, including . . . intentional mental distress."[75]

---

[68] <u>See</u> <u>Collins</u>, 503 U.S. at 120.

[69] <u>See</u> <u>Foley</u>, 948 F.2d at 14.

[70] Evidence "of a single event alone cannot establish municipal custom or policy." <u>Bordanaro</u>, 871 F.2d at 1156.  No evidence of such a policy has been presented here.

[71] <u>See</u> <u>Foley</u>, 948 F.2d at 14.

[72] Am. Verified Compl. ¶¶ 101–04 [#30].

[73] <u>See</u> <u>supra</u> Part III.B.1.

[74] Am. Verified Compl. ¶¶ 105–06 [#30].

[75] M.G.L. ch. 258 § 10(c).

Moreover, Plaintiffs' counsel conceded at the November 4, 2010 Hearing that the Town is not liable for intentional torts.

      C.     <u>Individual Defendants' Second Motion to Dismiss</u>

          1.     <u>Count I: 42 U.S.C. § 1983</u>

Count I, Plaintiffs' § 1983 claim against all Defendants except Tremblay for violations of the First Amendment, Due Process Clause, and Equal Protection Clause,[76] must be dismissed against the Individual Defendants.  As discussed in the context of the Town Defendants' <u>Motion to Dismiss</u>, Plaintiffs fail to state a constitutional violation.[77]

          2.     <u>Count II: Massachusetts Civil Rights Violation</u>

In Count II, Plaintiffs allege that the Individual Defendants should be held liable pursuant to the MCRA.[78]  Under the MCRA, any

> person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws the commonwealth, has been interfered with, or attempted to be interfered with, . . . may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief.[79]

Here, Plaintiffs have failed to establish that the Individual Defendants violated their constitutional

---

[76] Am. Verified Compl. ¶¶ 95–100 [#30].

[77] <u>See</u> <u>supra</u> Part III.B.2.b.

[78] Am. Verified Compl. ¶¶ 101–04 [#30].

[79] M.G.L. ch. 12 § 11I; <u>see</u> <u>Swanset Dev. Corp. v. City of Taunton</u>, 423 Mass. 390, 395 (1996) (setting out three elements that a plaintiff must prove to establish a claim under the MCRA).

rights.[80]  For that reason, their claim under the MCRA fails.[81]

> 3.     Count III: Reckless and/or Intentional Infliction of Emotional Distress

Plaintiffs assert Count III, intentional infliction of emotional distress ("IIED"), against all Defendants.[82]   To prevail on a claim of IIED, a plaintiff must demonstrate, inter alia: "that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was utterly intolerable in a civilized community'" and "that the emotional distress sustained by the plaintiff was 'severe.'"[83]  Mere "insults, threats, or annoyances" are not extreme and outrageous conduct.[84]  To show "severe" emotional distress, a plaintiff must show that he or she suffered "the kind of distress 'that no reasonable man could be expected to endure,' as opposed to mere 'emotional responses including anger, sadness, anxiety, and distress.'"[85]

The Amended Complaint fails to allege any facts that would support a claim of IIED.  As

---

[80] See supra Part III.C.1.  Moreover, Plaintiffs have not pled any other claims (other than those based on the Constitution) under the MCRA.

[81] The Individual Defendants also claim that they are entitled to qualified immunity on Plaintiffs' MCRA claim.  Mem. Law Supp. Individual Defs.'s Mot. Dismiss, 12 [#34].  Because Plaintiffs failed to plead a constitutional violation under the MCRA, this court need not address the issue of qualified immunity.

[82] Am. Verified Compl. ¶¶ 105–06 [#30].

[83] Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 672 (2010) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)).  A plaintiff must also demonstrate "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct" and "that the actions of the defendant were the cause of the plaintiff's distress."  Id.

[84] Tomaselli v. Beaulieu, 2010 U.S. Dist. LEXIS 42612 at *33 (D. Mass. Mar. 10, 2010) (citing Cady v. Marcella, 49 Mass. App. Ct. 334, 340–41 (2000)); Sena v. Commonwealth, 417 Mass. 250, 264 (1994) (citing Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987)).

[85] Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010) (citations omitted) (quoting Agis, 371 Mass. at 145, and Quinn v. Walsh, 49 Mass. App. Ct. 696, 706 (2000)).

a matter of law, the conduct of which Plaintiffs complain is not extreme and outrageous.  A police officer's decision not to investigate a case cannot be considered "utterly intolerable in a civilized community."[86]  The same is true for police officers reclaiming their cars from a service shop; issuing parking tickets; following a citizen; or making complaints about a citizen's business.

Nor have Plaintiffs shown that they suffered "severe" emotional distress.  Besides their claim within Count III that they suffered "emotional distress, pain and suffering, mental anguish, humiliation, and embarrassment,"[87] Plaintiffs do not mention emotional distress at any other point in their Amended Complaint, nor do they provide facts to show how they have suffered more than emotional responses.

IV.    Conclusion

For the foregoing reasons, the Town Defendants' Second Motion to Dismiss [#31] is ALLOWED and the Individual Defendants' Second Motion to Dismiss [#33] is also ALLOWED.  AN ORDER HAS ISSUED.

 /s/ Joseph L. Tauro
United States District Judge

---

[86] Howell, 455 Mass. at 672 (quoting Agis, 371 Mass. at 144–45).

[87] Am. Verified Compl. ¶ 106 [#30].